UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| THE GILLETTE COMPANY, | Case No. 1:15-cv-636 |
| Plaintiff, | Judge Timothy S. Black |
| vs. | |
| SAVE AND DISCOUNT LLC, | |
| Defendant. | |

**ORDER GRANTING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (Doc. 16)**

This civil action is before the Court on Plaintiff's motion for default judgment. (Doc. 16).  Defendant did not respond.

### I.  PROCEDURAL HISTORY

Plaintiff filed a complaint on September 29, 2014.  (Doc. 1).  Defendant's registered agent was personally served with the summons and complaint on November 30, 2015.  (Doc. 10).  Defendant failed to answer or otherwise file a responsive pleading within the time allowed by the Federal Rules of Civil Procedure.  Accordingly, on January 12, 2016, Plaintiff filed a request with the Clerk's office seeking an entry of default.  (Doc. 12).  Default was entered against Defendant on January 13, 2016.  (Doc. 13).  Now, Plaintiff seeks an award of damages.  (Doc. 16).

### II.  FACTUAL BACKGROUND

Plaintiff alleges that Defendant infringed several of its trademarks and design patents related to its Fusion® and Mach® lines of shaving products from sales made

through www.ebay.com, under the seller name "thepeddlershoppe." (Doc. 1 at ¶¶ 45-92). The infringed trademarks are U.S. Registration No. 0,767,865 (the "Gillette Mark"), U.S. Registration No. 2,300,839 (the "Mach3 Mark"), and U.S. Registration No. 3,099,224 (the "Fusion Mark") (collectively, the "Infringed Marks"). (Doc. 16 at 2). The infringed design patents are D730,578 S (the "'578 Patent"), D737,511 S (the "'511 Patent"), D737,512 S (the "'512 Patent"), D531,518 S (the "'518 Patent"), and D533,684 (the "'684 Patent) (collectively, the "Infringed Patents"). (*Id.*) Defendant infringed the Marks by a reproduction, counterfeit, copy, or colorable imitation of such Marks in connection with the offering for sale, distribution, and/or advertising of goods in interstate commerce in a way that is likely to cause confusion, mistake, or deceive consumers in violation of 15 U.S.C. §1114. (*Id.*) Defendant infringed the Patents by selling and/or offering for sale razor blade cartridges that reflect the design, or colorable imitation thereof, of one or more of the Patents, in violation of 35 U.S.C. § 271(a). Plaintiff never granted Defendant a license, authorizing it to use any of the Infringed Marks or Infringed Patents.

  Specifically, Defendant used the Infringed Marks in connection with the sale of razor blade cartridges described as "authentic OEM" Gillette Fusion® and Gillette Mach3® razor blade cartridges. (Doc. 1 at ¶ 31). These products presented the designs of the Infringed Patents, which protect ornamental designs incorporated into Fusion® razor blade cartridges and dispensers ('518 Patent and '684 Patent) and Mach3® razor blade cartridges ('578 Patent, '511 Patent, and '512 Patent). (*Id.* at ¶¶ 23-26). Defendant offered the infringing products in all fifty states and possibly internationally through

www.ebay.com. (*Id.* at ¶ 31). Defendant also offered the products for sale at their retail location, located at 2374 Foxon Road, North Branford, Connecticut. (*Id.*)

Defendant further violated Plaintiff's rights by illegally obtaining the products. Plaintiff purchased and tested samples of the Fusion® and Mach3® razor blade cartridges sold by Defendant through www.ebay.com, and determined that the Mach3® products were stolen. (Doc. 16 at 3). Plaintiff has reason to believe that the Fusion® products sold by Defendant were also stolen, based on the low sale price and lack of external Gillette retail packaging. (Doc. 1 at ¶¶ 35-38). The Fusion® and Mach3® products were stolen by one or more unknown third party(ies), and Defendant obtained the products with the intent to resell those products without the consent of, and without paying value to Plaintiff. (*Id.* at ¶ 43). Defendant knew or should have known that the products were stolen. (*Id.*) Therefore, Defendant is also liable for converting these products, and for being unjustly enriched through its sales of such products.[1] (*Id.* at ¶¶ 93-103).

### III. STANDARD OF REVIEW

Applications for default judgment are governed by Fed. R. Civ. P. 55(b)(2). Following the clerk's entry of default pursuant to Fed. R. Civ. P. 55(a) and the party's application for default under rule 55(b), "the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven." *Morisaki v. Davenport, Allen & Malone, Inc.,* No. 2:09cv298, 2010 U.S. Dist.

---

[1] Since Gillette has been able to obtain actual sales information for at least a portion of Defendant's infringing sales via subpoenas to eBay and PayPal, Gillette has limited its damage request to Defendant's profits.

LEXIS 86241, at *1 (E.D. Cal. Aug. 23, 2010) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Products,* 722 F.2d 1319. 1323 (7th Cir. 1983)).

Although liability may be shown by well-pleaded allegations, this Court is required to "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Osbeck v. Golfside Auto Sales, Inc.*, No. 07-14004, 2010 U.S. Dist. LEXIS 62027, at *5 (E.D. Mich. June. 23, 2010). To do so, the civil rules "require that the party moving for a default judgment must present some evidence of its damages." *Mill's Pride, L.P. v. W.D. Miller Enter.,* No. 2:07cv990, 2010 U.S. Dist. LEXIS 36756, at *1 (S.D. Ohio Mar. 12, 2010).

### IV.     ANALYSIS

Defendant having defaulted, the factual allegations in the complaint are deemed true. *Antoine v. Atlas Turner, Inc.,* 66 F.3d 105, 110 (6th Cir. 1995). To determine an undefined sum of damages, Rule 55(b)(2) "allows but does not require the district court to conduct an evidentiary hearing." *Vesligaj v. Peterson,* 331 F. App'x 351, 354-55 (6th Cir. 2009). An evidentiary hearing is not required if the Court can determine the amount of damages by computation from the record before it. *HICA Educ. Loan Corp. v. Jones,* No. 4:12cv962, 2012 U.S Dist. LEXIS 116166, at *1 (N.D. Ohio Aug. 16, 2012). The Court may rely on affidavits submitted on the issue of damages. *Schilling v. Interim Healthcare of Upper Ohio Valley, Inc.,* No. 206-cv-487, 2007 U.S. Dist. LEXIS 3118, at *2 (S.D. Ohio Jan. 16, 2007).

As established by the facts set forth in the complaint as well as Plaintiff's affidavits, Plaintiff is entitled to damages for Defendant's default.

4

### A. Injunctive Relief

First, Plaintiff requests that the Defendant be permanently enjoined from violating the Infringed Patents during the remainder of each patent's enforceable life, and permanently enjoined from violating the Infringed Marks.[2] In determining whether to grant a permanent injunction, the Court considers the following four-factor test: (1) whether the plaintiff suffered an irreparable harm; (2) whether the remedies available at law are inadequate; (3) whether the balance of hardships favors granting an injunction; and (4) whether the public interest would be served in granting an injunction. *Wynn Oil Co. v. Am. Way Service Corp.,* 943 F.2d 595, 608 (6th Cir. 1991).

#### 1. *Irreparable injury*

Courts routinely find irreparable harm when the infringer and patent holder are direct competitors. *Bendix Comer. Vehicle, Sys., LLC v. Haldex Brake Prod. Corp.,* No. 1:09cv176, 2011 U.S. Dist. LEXIS 312, at *16 (N.D. Ohio Jan. 3, 2011). Here, Plaintiff is Defendant's direct competitor. Plaintiff offers for sale, and sells, replacement razor blade cartridges for use with its reusable razor handles, in direct competition with Defendant's sales of the same, illegally-obtained goods. (Doc. 16 at 11). Also, Defendant uses the Infringed Marks to sell its illegally-obtained goods, without license or permission from the Plaintiff, implying an endorsement of its sales of these goods by Plaintiff. (*Id.*) These facts show that Plaintiff will likely suffer irreparable harm if

---

[2] Gillette is not seeking an injunction with regard to the '023 Patent, the '751 Patent, or the '315 Patent, each of which has now expired.

5

Defendant is not legally enjoined from violating the Infringed Patents and Infringed Marks.

### 2. Remedies available at law

By defaulting, Defendant admits that it used the Gillette Marks for the purpose of capitalizing on Plaintiff's goodwill and reputation. *Chanel, Inc. v. Huang Cong,* No. 10-2086, 2011 U.S. Dist. LEXIS 141177, at *32 (W.D. Tenn. Dec. 8, 2011). There are no assurances, absent a permanent injunction, that the Defendant will not sell infringing products again in the future.

### 3. Balance of hardships

Furthermore, the injunction will not unfairly harm Defendant, as it will simply be prohibited from continuing to deliberately infringe Plaintiff's intellectual property. "One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Broadcom Corp. v. Qualcomm Inc.,* 543 F.3d 683, 704 (Fed. Cir. 2008).

### 4. Public interest

Finally, there is no harm to the public interest in protecting Plaintiff's ability to prevent Defendant from continued infringement of the Infringed Patents and Infringed Marks. The public has a strong interest in maintaining the integrity of patents by enjoining patent infringement. *See, e.g., Smith & Nephew, Inc. v. Synthes (U.S.A.),* 466 F. Supp. 2d 978, 985 (W.D. Tenn. 2006).

The four-factor test for granting a permanent injunction weighs heavily in favor of such relief.  Accordingly, Defendant is enjoined and restrained from infringing, in any manner, the Infringed Patents and Infringed Marks.

**B.  Statutory Damages**

Next, Plaintiff seeks damages from Defendant's sales through www.ebay.com under the name "thepeddlershoppe."  *See* 35 U.S.C. § 289.

When determining the proper amount of statutory damages, courts consider whether the infringement was willful.  Specifically: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good faith belief that it was invalid or that it was not infringed; and (3) the infringer's behavior as a party to the litigation.  *Bott v. Four Star Corp.,* 807 F.2d 1567, 1572 (Fed. Cir. 1986).  Here, the evidence establishes that Plaintiff attempted to negotiate with Defendant by sending a cease and desist letter before initiating the lawsuit and negotiated in good faith with Defendant's counsel during the pendency of this litigation.[3]  Plaintiff only moved for default judgment when it became clear that Defendant was no longer responding to attempts to settle the matter.  Based on Defendant's conduct in this case, the Court finds that the Patents and Marks were willfully infringed.

---

[3] Gillette's counsel engaged in discussions and emails with an attorney who purported to represent Defendant, although no attorney has ever made an appearance on behalf of Defendant in this case.

Defendant had at least $18,349.14 in sales of infringing products between January 1, 2015 and September 13, 2015. (Doc. 16, Ex. B at 3-36). However, since Defendant also operates a retail location, it is possible that sales are even more significant. Accordingly, Plaintiff seeks trebling the damage amount pursuant to 35 U.S.C. § 284 and 15 U.S.C. § 1117(b). Given Defendant's willful infringement, the Court finds that Plaintiff is entitled to recover three times its conservative estimate of damages, or $55,047.42.[4]

### C. Attorney's Fees and Costs

Plaintiff requests that the Court find that this case is "exceptional" and award costs and attorney's fees pursuant to 15 U.S.C §1117(a). A trademark infringement case may be found exceptional when, as in this case, the defendant has disregarded the proceedings and the underlying claims of trademark infringement. *See, e.g., Lien v. Compusoft of Kalamazoo, Inc.,* No. 1:89cv104, 1991 U.S. Dist. LEXIS 3218, at *13 (W.D. Mich. Mar. 13, 1991). Defendant's non-responsiveness and complete failure to address the case in Court renders this case exceptional and merits an award of attorney's fees. Moreover, willful patent infringement also merits an award of fees. *See, e.g., Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,* 853 F.2d 1557, 1567 (Fed. Cir. 1988) (finding of willful infringement is sufficient to find a case exceptional).

---

[4] Gillette notes that pursuant to 15 U.S.C. § 1117(c), it is entitled to pursue statutory damages of not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, which could easily result in millions of dollars in statutory damages given the significant number of sales products sold. (Doc. 16, Ex. B at 3-56). Plaintiff's request for profits based on Defendant's eBay sales is a conservative approach to the damages Plaintiff could pursue.

The requested award of attorney's fees represents the amount expended on fees to the law firm of Dinsmore & Shohl, LLP for work performed in this case.  This includes legal work related to investigating the Defendant, drafting a cease and desist letter, drafting the complaint and related documents, serving the complaint and related documents, negotiating with Defendant's counsel, drafting, service of, negotiation, and review of information provided in response to subpoenas to third parties eBay and PayPal, seeking an entry of default, and drafting a motion for default judgment and supporting documents.  (Doc. 16, Ex. A at ¶ 9).

Accordingly, in light of Defendant's willful infringement, the Court concludes that Plaintiff is entitled to attorney's fees.  To date, Plaintiff has incurred attorney's fees in the amount of $21,489.45.  (Doc. 16, Ex. A at ¶¶ 3-8).  This amount represents a reasonable fee in light of the experience of counsel, the nature of the case, and the services provided.

### D. Pre and Post Judgment Interest

In addition to attorneys' fees and costs, Plaintiff also seeks an award of pre-judgment and post-judgment interest.  *See* 28 U.S.C. 1961(a).  Here, Plaintiff discovered Defendant's infringement of the Infringed Patents less than one year after Defendant began infringing.  Plaintiff sought to protect its rights, first by notifying the Defendant with an infringement letter, and then by filing suit.  Accordingly, an award of pre-judgment interest from the date of the cease and desist letter, September 10, 2015, through the date of judgment, is appropriate in this case.  *See Informatica Corp. v. Bus. Objects Data Integration, Inc.,* 489 F. Supp.2d 1075, 1086-1087 (N.D. Cal. 2007) (pre-

judgment interest is ordinarily awarded from the date of the infringement to the date of judgment).

Additionally, an award of post-judgment interest is also appropriate pursuant to 28 U.S.C. §1961(a), since Defendant defaulted and Plaintiff is likely to seek to attach assets or take other steps to secure payment of the judgment, which will likely delay the payment. In calculating pre-judgment and post-judgment interest, the rate of the 52 week Treasury Bill is an appropriate rate pursuant 28 U.S.C. § 1961. *See also Isaac Ford v. Uniroyal Pension Plan,* 154 F.3d 613, 619 (6th Cir. 1998). As of April 27, 2016, this rate was 0.60%.[5] Compounded annually, this yields $0.30 in interest per day.[6] Accordingly, Plaintiff is entitled to pre-judgment interest from September 10, 2015 through the date the judgment is entered at a rate of $0.30 per day, and post-judgment interest at the same daily rate from the date of judgment until the judgment is paid.[7]

## V. CONCLUSION

For these reasons, Plaintiff's motion for default judgment (Doc. 16) is **GRANTED**. Judgment shall be entered in favor of the Plaintiff and against Defendant Save and Discount LLC as follows:

---

[5] *See* http://www.treasury.gov/resource-center/data-chart-center/interest-rates/Pages/TextView.aspx?data=billrates, accessed on April 27, 2016.

[6] 0.0060/365 x $18,349.14= $0.30

[7] Since an award of pre-judgment interest is not punitive, it can only be assessed against actual damages. *Saint- Gobain Autover USA, Inc. v. Glass N. Am., Inc.,* No. 1:06cv2781, 2010 U.S. Dist. LEXIS 30906, at *75 (N.D. Ohio Mar. 31, 2010).

(1) Save and Discount LLC is hereby **ENJOINED** and **RESTRAINED** from infringing, in any manner, Gillette's Infringed Patents during the remainder of each patent's enforceable life, and Infringed Marks pursuant to 35 U.S.C. § 283;

(2) Save and Discount LLC shall pay damages in the amount of $55,047.42, which represents an award three times the conservative estimate of damages pursuant 35 U.S.C. § 284 and 15 U.S.C. §1117(b);

(3) Save and Discount LLC shall pay Plaintiff's costs, including reasonable attorney's fees, in the amount of $21,489.45 pursuant 15 U.S.C. § 1117(a); and

(4) Save and Discount LLC shall pay interest on the statutory award at an amount of $0.30 per day from September 10, 2015 until the date judgment is paid pursuant to 28 U.S.C. § 1961(a).

**IT IS SO ORDERED.**

Date: 7/13/16

*s/ Timothy S. Black*
Timothy S. Black
United States District Judge

11